## DWIGHT F. BROOKS AND OTHERS v. L. D. CARPENTER, ETC.

## SCANDINAVIAN AMERICAN BANK OF SEATTLE, WASHINGTON, AND OTHERS, APPELLANTS.[1]

February 9, 1923.

No. 23,225.

**Foreclosure of warehouseman's lien—findings sustained.**

1. In an action to foreclose a warehouseman's lien for the storage of certain lumber and material, the evidence is *held* to sustain the findings of the trial court to the effect that the property was delivered to plaintiffs for storage and not as a result of a sale.

**No estoppel against plaintiffs.**

2. No fraud or acts constituting an estoppel of plaintiffs to allege and rely upon the fact of a storage contract are disclosed by the evidence.

**Continuous shipments constituted one contract.**

3. The shipment by the owner of 26 cars of lumber to plaintiffs at different dates, though in continuous sequence, *held* to constitute, on the facts stated in the opinion, one transaction and not separate and independent contracts.

[1]Reported in 191 N. W. 1001.

Action in the district court for Ramsey county to foreclose a warehouseman's lien. The case was tried before Olin B. Lewis, J., who made findings and ordered judgment in favor of plaintiffs. From the judgment entered pursuant to the order for judgment, defendants appealed. Affirmed.

*Fowler, Carlson, Furber & Johnson*, for appellants.

*Edward P. Sanborn*, for respondents.

BROWN, C. J.

Action to foreclose a warehouseman's lien against certain lumber and building material in which plaintiffs had judgment and defendant appealed.

There is no substantial dispute in the evidence, although some conclusions deduced therefrom by counsel for defendants are not concurred in by counsel for plaintiff. But the following facts are in no way controverted. At the time the subject matter of the action arose, L. D. Carpenter was an extensive wholesale dealer in western lumber products with business headquarters in the state of Washington, often making car lot shipments of lumber to the eastern markets, including the trade in this state and intervening points.

Plaintiffs are lumber dealers of St. Paul, this state, and were such during all the times here in question. On different dates between January and September, 1920, Carpenter shipped to plaintiffs some 26 cars of lumber consigned to them at the Minnesota Transfer. All the cars came through and were received by plaintiffs and the lumber was unloaded and placed in storage for the use and subject to the order of Carpenter. Plaintiffs at the instance of Carpenter paid the freight charges for the transportation of the lumber, and other items of expense incident to the storage of the same, and has since retained its custody and control, with the exception of a quantity heretofore sold on the market, the proceeds being applied in reduction of storage and freight charges just mentioned. The action is to enforce the lien thus arising.

At the time of the several car lot shipments referred to, Carpenter by formal writing executed by him assigned the several

bills of lading or railroad shipping contracts to defendant, Scandinavian American Bank of Seattle, as security for loans made to him in respect to each shipment; the assignments being attached to and made a part of the bills of lading. The money so advanced and loaned to Carpenter has never been paid, and is still owing to the bank. Plaintiffs were duly advised of the assignments as they were made. The bank subsequently became insolvent and is represented in this action by defendant, Duke, as trustee under the statutes of the state of Washington.

The complaint set out facts entitling plaintiffs to the relief demanded, namely, the sale of the lumber in foreclosure and satisfaction of their lien. The answer of the defendant bank put in issue the allegations of the complaint to the effect that plaintiffs held the lumber as warehousemen, and affirmatively alleged that plaintiffs purchased the lumber from Carpenter, that their only right thereto was as owners, and subject to the rights of the bank under the assignments of the bills of lading.

Thus was presented the substantial issue of fact in the case. It was resolved in plaintiffs' favor, the findings of the trial court being that all lumber was shipped by Carpenter to plaintiffs to be by them stored for his use and subject to his order; that the lumber was not sold to plaintiffs, and that they never became its owners. The court further found the amount of plaintiffs' lien for such storage, including freight charges advanced and paid by them and other items incident to unloading the lumber and placing it in storage. The lumber was ordered sold, and due report thereof made to the court as in such case provided by law; the proceeds to be applied in satisfaction of plaintiffs' lien, which the court found paramount and superior to any claim of the bank under its assignments of the shipping contracts.

1. The controlling question in the case is whether the findings of the trial court are sustained by the evidence. Our consideration of the record leads to an affirmative answer, and as to all the shipments made and here involved. It is clear from the evidence that plaintiffs did not order any of the cars of lumber shipped to them. The first 6 cars were forwarded without their knowledge, and as

soon as they came to hand, their first information of the shipment, they promptly wired Carpenter that they could accept the lumber only for storage, and would not purchase it. They also at once wrote Carpenter to the same effect. The result was an agreement that the lumber so received should be taken by plaintiffs and held in storage for Carpenter. As to the other shipments, 20 cars, the bills of lading on their face stated that the lumber was shipped to plaintiffs "for storage." The evidence wholly fails to show a sale or even pending negotiations of purchase of the lumber, and a finding that a sale was in fact made would find no support in the record. The evidence affirmatively shows to the contrary, and the findings must be sustained.

2. But counsel for defendant urge with some earnestness that as to the bank plaintiffs are estopped to deny ownership of the lumber. There is in our view of the record no sound basis in support of the point. Plaintiffs had no contractual or other relation with the bank, save that they were bound to recognize its rights under the assignments of the several bills of lading; but the situation imposed upon them no duty or obligation to protect the bank, any further than, as warehouseman in possession of the lumber, they were bound to act in good faith in their dealings with the property. The record presents no reason for imputing bad faith to plaintiffs in this respect. The suggestion that Carpenter was guilty of fraud and fraudulent conduct toward the bank of which plaintiffs had notice and participated is not borne out by the record. The claim that the lumber was held in storage by plaintiffs was not concealed from the bank; in fact as to 20 of the car shipments the fact appeared on the face of the bills of lading, all of which were assigned to the bank. The notation was affirmative notice to the bank as to the character of the shipments, and the evidence contains no intimation that plaintiffs or Carpenter intended to deceive the bank, or other persons dealing in the lumber. And without futrher discussion of the facts we conclude with the statement, fully supported by the record, that the claim of fraud and estoppel urged by the bank is not sustained by the evidence.

3. The 5 cars of lumber which were sold by plaintiffs, were so sold with the consent and acquiescence of Carpenter. The market price of the lumber was received, and except as to 2 of the cars the amount received was less than the lien claim of plaintiffs. The 2 cars brought a surplus. The bank was in no way wronged or prejudiced by the sale, and is in no position now to complain. The entire shipments of lumber should, under the facts here disclosed, be treated as several acts constituting one transaction; that is, the 26 car shipments following in continuous sequence, all made for the one purpose, namely, storage with plaintiffs, should not be treated as 26 independent contracts but as an entirety. In that view the surplus arising from the sale of 2 of the cars was properly applied in reduction of plaintiffs' lien as a whole.

This covers the case, and all that need be said in disposing of the points made. There were no errors on the trial, the findings of fact are supported by the evidence, and the judgment awarded is in harmony with the law and the facts so found.

Judgment affirmed.